Oh, yay. Oh, yay. Oh, yay. The Honorable Appellate Court Fifth District State of Illinois is now in session. The Honorable Justice Bowie presiding along with Justice Cates and Justice Vaughn. The first case this morning is number 5-17-00357, People v. Yarber. Arguing for the appellant, Ronald Yarber, is Susan Wilhelm. Arguing for the appellate, People of the State of Illinois is Valerie Osmond. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings. Good morning, counsel. How are you? Fine, Your Honor. Good. Are we ready to proceed? Yes, Your Honor. Then go right ahead, Ms. Wilhelm. Thank you. Good morning, Your Honors. Counsel, I'm Susan Wilhelm with the Office of the State Appellate Defender. I represent Ronald Yarber. And he was denied the effective assistance of counsel when his counsel did not object to the admission of AEA's notebook, which contained inadmissible hearsay. His counsel acquiesced to the admission of the entire notebook without any limitation on its use. And this issue is properly raised as ineffective assistance. The narrative of abuse prepared after the fact was hearsay. It did not meet any exception for admissibility. And the state's brief did not note any exception that would allow its admissibility. It's not a prior consistent statement. It's not a recorded recollection. It's not an excited utterance. And it doesn't meet the exception for statements by child sex abuse victims. Ms. Wilhelm, why isn't it a past recollection recorded? Because she was able to recall at trial all of the events in the notebook. And they didn't ever take her through whether or not she had a problem remembering things. In fact, they talked about how good she was at remembering everything. And they never went through the narrative in the notebook. Do you need to have someone not remember in order to have past recollection recorded? I believe you need to have some foundation given for that. And I think the problem here is the only thing she testified about in the trial was the drawing at the beginning of the notebook. But there was never any testimony or explanation other than she drew these things after the fact to explain the many, many pages of the ongoing narrative of abuse. When you did the research on your brief, did you ever see a case called people versus Walter Rockman? Walter Rockman? Yes. Your honor off the top of my mind. I'm not familiar with that. But I will look it up. And if you would like I can do a supplemental brief. In Walter Rockman. The only reason I know that case is I was a young lawyer. So you can tell how long ago that was. Okay. But the mother recorded in a calendar book for two years, whether there was anal or vaginal abuse of the child. And the calendar on appeal to the Supreme Court was deemed admitted. And it seems to me that we have a very similar issue here. And as I said, I was a young lawyer as a prosecutor back in the day. And that calendar got admitted. So when I read this case, it reminded me of Walter Rockman. It's just one of those cases you never forget, because it was so important in your career. But I would be interested in knowing what you think about that. Because there is a case out there where this came in. And you're, I'm sorry, your honor, like if you would like time, we can ask the presiding justice if you will be willing to give you that time in order to look at the case. Well, I believe I can distinguish it simply on the fact that you're talking about in Rockman, a calendar where somebody filled out every day as things were happening. This was a narrative that was written after the fact. Why isn't it a matter of trial strategy? Why couldn't an attorney say, I would rather get this notebook in and then look like I'm picking on this victim for an hour and a half asking her about each individual incident? Why isn't it a matter of trial strategy notebook and get this over with? Part of the problem, your honor, is that there's no trial strategy to allow in something that's otherwise inadmissible. And they allowed in the notebook, and that narrative, she was never questioned specifically on the narrative. She was only questioned about the photo, the drawing at the beginning. And so to allow this narrative in, he basically just allowed it to come in unchallenged. So that's not a trial strategy at all. That is, he simply did not realize the impact of what was coming in. And so that's a breakdown in the adversarial system. And so, and I believe that when we move to the prejudice prong, what we're going to see is that without this, there would be a different outcome. Because taking just AEA's first alleged encounter, in the courtroom, she only describes digital and oral penetration in that encounter. But then when you read her description in the notebook, it's much more descriptive. It includes additional acts of sexual conduct that were not part of her in court testimony. And that would have been available for the jury to peruse during her deliberations. So in that, by that failure, the defense counsel allowed the jury to access information that was never subject to cross-examination. And I believe that this leads into part of our problem here is then the state was able to use this notebook, and especially in its closing argument. And that also leads us into the argument that not only was the state able to use this improper narrative in closing, telling the jury that AEA wrote everything in here, and she argued that they could use this as substantive evidence, and defense counsel didn't do anything to limit the admission or the use of this. And in addition, we have the prosecutor making comments and closing argument that vouch for AEA's testimony, while repeatedly attacking the credibility of Ron Narver's wife, Lisa. Counsel isn't the prosecutor allowed to bring out inconsistencies and talk about credibility and whatnot in their closing argument? I would say that she went much further than bringing out inconsistencies and credibility. She repeatedly vouched for AEA, saying things like she was a compelling and credible witness, her memory was phenomenal, but that's typical of people with Asperger's. So again, vouching for her credibility. And she also attacked Ron Narver's wife, Lisa, saying she sabotaged this case. Lisa is lying to protect her husband. She accused her of falsifying her testimony merely to discount the medical evidence. And so her closing argument went over the line of simply commenting on the evidence to attack one witness while vouching for the other. And again, we have no objection to this. So this court is going to have to apply the has to show that our evidence is closely balanced. So that this error alone is just the balance of justice against him. But here we do have serious gaps in the state's ability to prove the elements of the charged offenses. AEA testified to several specific acts of penetration that begin at different ages. And if you parse out her testimony, you see that there are gaps in when she says that things occurred. She also said that these acts occurred sometimes every day, sometimes every few weeks. She used the phrase continuously. But then we learn on cross-examination that there's a two-month period when she's not in the Yarbrough home, so there's no sexual conduct. She only described the acts on when she was in court testimony. She only describes the acts as occurring in her bedroom in the trailer on Cottage Grove Road. She never explained if the acts continued after they moved when she was 17 and a half, even though Ron Yarbrough was still charged with four counts of penetration for every month until that 17th birthday. I'm sorry, until her 18th birthday. And oh, my goodness. I'm sorry. AEA was not isolated during these years. She spent a lot of time at Turner Manor where Bonnie Mahan gave her expert opinion that she could not have kept a secret if she was having sex. Dr. James Peterson evaluated her in 2008 in the middle of this supposed abuse and said that he not only found nothing indicating that she was being abused, he found that she was thriving in that home. Jeremy Jobst, who counseled her throughout these years, testified that while AEA talked freely about her previous abuse, she never indicated that she was currently a victim of abuse. And again, we have an additional complication in this case in that we have a jury that was not properly admonished on their duty to weigh the and then they compounded that error with the lengthy delay between admonishing the veneer and then questioning the veneer about the principles. And these zero violations create instructional error. And the danger here is that a jury without our proper zero admonitions can fail to uphold the state's burden of proof and also fail to grant Ron Yarbrough his presumption of innocence. These are errors in deliberation that can tip the scales of justice against the defendant in a close case like this one. And for those reasons, because Ron Yarbrough's counsel was ineffective when he failed to object to the admission of AEA's narrative of abuse, we ask that this court reverses convictions and remand for a new trial. And we further assert that there was plain error in the state's improper closing argument. And the evidence here was closely balanced. And for that reason, the jury's ability to properly weigh the evidence was impacted by these improper zero admonitions. And we would ask that this court grant Ron Yarbrough a new trial. Thank you. Thank you, counsel. Obviously, you'll be given time for rebuttal. And before we close today, then we will discuss timeframes if you all wish to have the supplemental briefs on the case that Justice Cates has brought up. So before we end today, we'll talk about that. Ms. Osmond, are you ready to begin? Yes, your honor. Then go right ahead. Good morning, your honors, counsel, and may it please the court. My name is Valerie Osmond, and I represent the state of Illinois in this matter, the people of the state of Illinois versus Ronald Yarbrough. To provide some background in this case, in November of 2015, the state charged the defendant with 16 counts of predatory criminal sexual assault of a child for the four acts of penile penetration, digital penetration, and I struggle to say this word, conningless and fellatio committed against AEA, who was under 13 years of age when the acts were committed by the defendant who was over 17 years of age at the time. Additionally, since AEA turned 13 years of age in 2004, the state further charged the defendant with 240 counts of criminal sexual assault for the same four acts mentioned previously committed against AEA, who was under 18 years of age at that time. And at that time, the defendant was a family member of AEA. The defendant is appealing from the trial court's September 15, 2017 order, which denied the defendant's motion to reconsider sentence after being convicted of a jury for those 16 counts of predatory criminal sexual assault of a child and 238 counts of criminal sexual assault. Let me interrupt you real quick here since we're talking about these counts. Is it true that the state concedes that counts 161 through 208 that they didn't carry the burden of proof? The child was living outside of the house? Continuously, in other words, this issue of continuously residing together that was mentioned by Ms. Wilhelm, what's the state's position on that? Well, the state's, are you talking about argument number five, your honor? Yes. So the state, as it states in its brief, there's an argument to be made that AEA was a family member at the time that the statute was in effect when the word uncle was not included, because there is things in the record that do state that the defendant did adopt AEA. However, the opposing counsel is correct in stating that none of that was ever presented to the jury. So assuming that he was not a family member, then yes. What's the state's position on that, those counts? Let me find it. Okay. So yes, the state's position, if this court is inclined to agree with the defendant and conclude that the state did fail to prove the essential element of counts 161 to 208, which covered the time period from October, 2007 through September, 2008, which is the time period in which the party stipulated that AEA was not living with the defendant and Lisa, then this court should vacate those counts, but affirm the rest of the judgment below. So do you, are you saying we should vacate the conviction entirely because he was not living there? She was not living there continuously? Vacated or resentenced? Just counts 161 through 208 should be vacated. In their entirety? Yes. If this court is inclined to agree with the defendant's position. You just told us there was no evidence proven that he wasn't the uncle. In court, yes. However, the record does state a couple of times that AEA was the adoptive niece of the defendant, but as the opposing counsel addresses in her reply brief, both of those were not sworn testimony presented to the jury. They were, I believe one was a police statement written after AEA came and disclosed and the other was written, I think, by a counselor. Well, even though it's in the record, if the jury didn't hear it, you would agree that it's not a matter of proof that the trier of fact had before it. Correct. Okay. Thank you. I thought the predatory criminal sexual assault counts for 16 or 16 of those counts. My understanding was she denied some penetration. So 14 of those 16 counts would be vacated also. Is that not correct? So there don't, there'll only be two good counts of predatory criminal sexual assault. Which argument are you referring to your honor? The testimony that she, the opposing counsel mentioned that she denied some acts before she was age 14. She said some acts occurred when she was 13, but no anal penetration before age 14 and no vaginal penetration before age 14. It was all digital before age 14. So that would just leave two digital counts when she was under age 14. Well, there is some inconsistencies in the testimony. AEA was asked about these things various different times at one point on page 762 in the supplement to the common law record. AEA did testify that it started before she was 12, or she said it was, she was 12 and a half and continued until she was 21. And she said sometimes every day. Yes. Sometimes every few days. Yes. So she was consistent in when things did happen. However, with specificity to the opposing counsel is correct. And asserting that she did admit that none of those are certain acts did not occur until she was 13 or until she was 14. Then yes, this court should probably vacate those convictions. And what counts are those just from my understanding? Um, glance at the reply brief. I'm not remembering the exact counts. There were so many in this case, but I am looking for them. Okay. While you're doing that, um, following up on justice bonds question, are you saying these facts are still disputed before the jury or that they were undisputed as set forth in the reply brief? Which particular counts that we're talking about in the first 16, I think. Yeah. Okay. So one through 16 are the predatory criminal sexual assault charges. Right. Those, uh, the state had to prove all four acts occurred in all the months charged. Does that answer your honest question? Well, you're saying that you think that if we believe the reply brief, certain counts should be vacated. I'm trying to find out if the state believes that as to these 16 counts, there was proof that would substantiate a conviction. Yes, your honor. Actually. Okay. I did find it on page 14 of opposing counsel to reply brief. She does mention that, um, AEA testify that she was penetrated vaginally with a penis since she was 14 years old and that's on page 759 of the supplemental common law record. So what, where does that get us from the state's perspective? Um, if she is steadfast on that point that she was only penetrated vaginally since she was 14 and they charged it as occurring since she was 12, then for each month of those, um, he was convicted, then those should be vacated. Okay. However, with respect to counsel's second argument, which, um, opposing counsel addressed first, I would like to touch on the Strickland standard. So defendant is alleging ineffective counsel because he did not object to the admission of the notebook without asking for a limiting instruction on its use to the jury. However, as the Supreme court has stated in people versus Williams, because opposing counsel had the opportunity to, and in fact did cross and examine the out of court declarant, which was AEA, who was the author of the notebook and who did testify at trial, then there should be no reversible error found in the admission of such hearsay testimony because that's hearsay testimony is considered merely cumulative in nature and should not affect the outcome of the trial in that sense. With respect to the third argument that defendant brought up, the prosecutor committed reversible error when she made comments in closing argument that bolstered AEA testimony while attacking the credibility of Lisa Yarbrough defense of her husband. This court should also find this unpersuasive. There's case law to support in people versus Wheeler. The Illinois Supreme court clearly indicated its intent to reaffirm its intolerance of prosecutorial misconduct. However, prosecutors are imported wide latitude in closing argument and reversal and retrial are not warranted unless the improper remarks constituted a material factor in the defendant's conviction. And the defendant has not put on any evidence to prove that that is what the case was in this instance. And for these reasons, the state respectfully request this court affirm the defendant's convictions and sentences with the exception of the counts that we discussed previously. Thank you, counsel. Rebuttal. Thank you, your honors. Just quickly to touch on the Williams case that was just referred to. In the Williams case, one of the one of the important details was that there was nothing in the letter that was admitted there that was not also covered in testimony. And here, as I explained before, her testimony and as counsels just discussed with the state, her counsel is vague. And the narrative of abuse was much more detailed, much more graphic, and could have allowed the jury to add in additional information that was never properly before the court. And I understand your honors frustration, when I try to figure out which counts go out, because this is somebody who doesn't give anything. There's nothing in the testimony that we can pin down to this month. Is it the summer? Was it snowing outside? And it all comes back to this resident child molester standard set out in Letcher. And even Letcher, which allows for such generic testimony, says a victim must still describe the kinds of acts committed with sufficient specificity, both to ensure the conduct occurred, and to differentiate between the different types of conduct. And here, the state charged Ron Yarber with 200, they charged him with more, they charged him with 262, and they got convictions on 254 separate and distinct offenses. It was their burden to prove the elements of each of those offenses. And as your honors have discussed, there are elements that were not proven, such as Ron Yarber and Lisa Yarber did not adopt AEA. There's nothing in the testimony except for a couple of throwaway lines and police reports that say she was adopted. Everybody else testified she was the niece. She had parents. She actually went back and lived with her parents at one point. So the state had specific elements that they had to prove. And even in Letcher, where the court talks about allowing this vague testimony, this generic testimony, they still vacated two counts because the testimony was insufficient to show those distinct acts of penetration. And here, we have a charge of four distinct acts of penetration each and every month. The testimony needs to show that each and every one of those four types of penetration happened monthly. Letcher was concerned about children who lacked a meaningful point of reference. And one of the examples they gave was moving between houses. Well, here we have a reference point because it's uncontested that the Yarbers and AEA moved to a different home when she was 17 and a half. She only testified about abuse in the trailer. She only testified to the trailer doors. She, even with these meaningful points of reference available, the state did not bring out more precise testimony. And this generic testimony is dangerous. Even Letcher found that this testimony, the testimony that penetration occurred too many times to remember is simply insufficient. So here, when you go through her testimony and you parse it out, she testified to active oral penetration in the summer when she was 12 and a half, possibly digital penetration, an act of fellatio in November of 2004, vaginal and penile penetration at the age of 14, digital penetration at an unspecified age. We simply do not have distinct sufficient facts to support 254 separate and distinct defenses. And for that reason, I would ask that this court vacate the charges for which there is actually done the, the charting that has to be done. Yes, your honor. I went, I made up a chart months, years, types of penetration, and I went through her testimony. And the problem is she doesn't give months. She gives us, can you give us a hint as to what counts the defendant believes shouldn't be vacated? Everything other than, I mean, she was very specific about an act of fellatio in November of 2004, the oral penetration in the summer. She was 12 and a half does not specify a month, but I know that court allows testimony to be somewhat flexible as far as months. She says vaginal and anal, anal, vaginal and anal penetration at 14, again, no months and digital penetration at an unspecified age. Those are her specific test bits of testimony. And your honors, I struggled also where to put those on a chart. I'm, this is that weird territory in Letcher where Letcher talks about the testimony has to be specific. You have to ground it in some way. And here the state did not elicit strong testimony that would ground these specific acts in a way to distinguish them from each other. Which so under, under the best case scenario, you would find two counts basically, if there could be any at all. If the first three arguments, yes, I would think November 2004 in the summer at age 12 and a half. Possibly. Yes. Those are the only, I mean, those are the only two that you could possibly pin down. Okay. Thank you very much. And just to follow up with Justice Cates, those are two counts of predatory class X, correct? No, the 12 and a half would be predatory class X, but 2004, she would have already passed the age limit and she would be, it would just be the class one. Okay. Well, thank you, counsel. Going back to what we talked about earlier, would you like to have time to file supplemental briefs regarding the case that Justice Cates brought up? Yes, I would. I know that I addressed it in closing art or I'm sorry, my original argument, but I would like an opportunity to submit a supplemental brief being much more specific. And I'll ask both counsel, 14, 21 days, how long would you need to do that? I could do that in 14 days, your honor. Ms. Osment? I'm currently working on a juvenile brief that's due on February or March 2nd that I was already given one extension on, so that's my main priority. So if I can maybe have an extra week after that. Okay. Justice Bowie, could we give maybe the state seven days after the 14 days that would put her at 21 days? Would that be acceptable, Ms. Osment? Yes, your honor. Or 10 days, do you need 10 days after the 14? That would be even better. Okay. Makes me no difference, Justice Bowie. No, that sounds fine. Anything else from counsel or from the court? So did you give her 10 days or seven days? We'll give Ms. Wilhelm 14 days and then Ms. Osment another 10 after that. Okay. Thank you. Thank you, your honor. Thank you all. Obviously, we will take this matter under advisement and we will issue a disposition in due course. Thank you all. Thank you.